**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 18, 2012

No. 11-20015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DEMOND E. HOUSTON,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
U.S. Docket No. 4:09-CR-00138

Before HIGGINBOTHAM, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Demond Houston appeals his conviction and sentence for violating 18 U.S.C. § 922(g)(1) by illegally possessing a firearm following a felony conviction. We REVERSE and REMAND for a new trial.

## I. FACTS AND PROCEEDINGS

The facts underlying this prosecution began on August 15, 2008, when a man named Derek Woods took out his trash and noticed that his car's tires were flat. As he bent to examine them, two men confronted him. The larger of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20015

two carried a shotgun, while the smaller man carried a black handgun. The two men forced Woods back into his house where they robbed him and fled.

In the meantime, municipal trash collectors Landrew Ward and James Janice were in the neighborhood on their regular rounds. Ward saw the two robbers take Woods into his house. Ward and Janice called the dispatch operator to report the robbery and then drove around the block to return to the house to get the address. As they circled back, they saw the robbers coming out of the house. As the perpetrators ran to their car, Janice recognized Houston as the larger of the two robbers. He told Ward that he knew Houston because he had "done time with him."[1]

As the robbers made a U-turn and drove away, Ward and Janice reported the car's license plate number to the dispatch operator. The police arrived about ten minutes later, and both Ward and Janice recounted the incident. Janice identified Houston by his last name as one of the two robbers.

Later that day, Officer Pena of the Houston Police Department arrested Roger McCray, Houston's brother, on suspicion of the robbery. Immediately thereafter, Officer Pena took McCray to a McDonald's parking lot where Officer Pena had arranged for Ward and Janice to come for a live show-up. Ward and Janice gave the officer a "thumbs up," which Officer Pena took to mean that they had identified McCray as being involved in the robbery. McCray, who was deceased by the time of Houston's trial, made post-arrest statements implicating Houston for carrying a firearm in the course of the robbery.

The police ran the license plate number that Ward and Janice provided them and found that the car was registered to Houston. Six days later, on August 21, 2008, police officers went to Houston's house to execute an arrest warrant for the robbery. As they were leaving, Houston indicated that he

---

[1] Janice and Houston were incarcerated at the same prison trustee camp for about six months and became acquainted after they discovered they were both from Houston, Texas.

2

No. 11-20015

needed to exit through the garage so that he could lock his front door. As they walked through the garage, the officers observed a car matching the description of the one used in the robbery bearing the license plate number provided by Ward and Janice. The officers also noticed a shotgun in the corner of the garage. The shotgun had a sawed-off handle with electrical tape wrapped around it and was loaded with three rounds.

Houston was indicted by a federal grand jury for one count of being a felon in possession of a firearm in violation of § 922(g). The indictment stated: "On or about August 15, 2008, . . . , Demond E. Houston, defendant herein, having been previously and finally convicted in a court of law of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting interstate commerce, [a shotgun]."

At trial, Houston denied participating in the robbery, asserted that he was at home at the time of the robbery, and testified that he was unaware that a shotgun was in his garage when the police arrested him. He testified that McCray and McCray's friend lived with him from 2003 to 2007, but that he asked them to leave after he discovered guns in their rooms. McCray went to live with his girlfriend around the corner but still had free access to Houston's house because he knew the code to open the garage door.

The case was submitted to the jury which twice returned notes indicating that it was deadlocked. However, after instructions from the district court to continue deliberating, the jury returned a verdict finding Houston guilty. The district court sentenced Houston to 78 months of imprisonment and to three years of supervised release. Houston timely appealed.

## II. OVERVIEW

Houston raises numerous issues on appeal. He contends that the district court reversibly erred at trial by: (1) instructing the jury on constructive possession; (2) refusing to give the jury an alibi instruction; (3) admitting

evidence of his prior misdemeanor theft conviction and subsequent probation violation; and (4) permitting the Government to reference his deceased brother's confession.    Houston also argues that even if each of the foregoing errors individually does not constitute reversible error, the cumulative effect of the errors deprived him of a fair trial.[2]

As the case proceeded to trial, the dispute over Houston's guilt centered on the identity of the person holding the shotgun during the August 15 robbery. Houston did not contest any aspect of the basic story Ward and the other witnesses recounted except one: that he was a participant in it.  He specifically denied that he was the person wielding the shotgun on August 15 and generally denied any other involvement in Woods's robbery.  Houston thus squarely made identity the key issue in the case and put the Government to its burden on that issue.  We examine the alleged errors with that point in mind.  We first address whether there was error below and then analyze whether any such errors are reversible.

## III. DISCUSSION

### A.  Jury Instructions

#### 1. "Constructive Possession"

The case against Houston was one of actual possession in connection with the August 15 robbery.  Either he was the one holding the shotgun (actual possession) or he was not (no possession).  Nonetheless, over Houston's objection, the Government convinced the district court to give a constructive possession charge in connection with the weapon found in Houston's garage on August 21.

We review Houston's claim of error on the trial court's jury instruction under an abuse of discretion standard. *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005) ("A properly objected-to instruction is reviewed for abuse of

---

[2] Houston concedes that his challenge to § 922(g)'s constitutionality is foreclosed, so we will not address it further.  *See United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001).

No. 11-20015

discretion."). Giving a constructive possession instruction when the evidence supports only an actual possession instruction constitutes error. *United States v. Ortega*, 859 F.2d 327, 329-31 (5th Cir. 1988) (concluding that, although error was committed, it was not "plain error").

Actual possession requires direct physical control over the item possessed. *United States v. Jones*, 484 F.3d 783, 787-88 & n.11 (5th Cir. 2007) (vacating conviction in a purely actual possession case because 404(b) evidence was improperly admitted as it was relevant only to constructive possession). Constructive possession, by contrast,

> is defined as "ownership, dominion or control over the [weapon] itself or dominion or control over the premises in which the [weapon] is concealed." However, where two or more persons jointly occupy the place where a firearm is found, mere control or dominion of that place is, by itself, insufficient to establish constructive possession. Evidence showing at least a plausible inference that the defendant had knowledge of and access to the weapon is necessary to establish constructive possession.

*United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996) (citations omitted).

Before this court and in closing arguments to the jury, the Government argued that, despite the indictment's charge only of the August 15 incident, Houston could also be convicted solely on his alleged "constructive possession" of the shotgun on August 21 (in the garage). Indeed, the Government averred at oral argument that the latter was the stronger case factually. Houston argues to us that the garage incident is only evidence of the actual possession of August 15 and is not factually a standalone charge. Unlike the typical situation where the same series of facts are argued as supporting actual possession or, in the alternative, constructive possession, here two separate events six days apart are argued as supporting two separate instructions.

Houston thus contends that the district court erred in submitting the constructive possession charge to the jury to support the Government's eleventh-

hour theory that Houston can be convicted of constructive possession for the August 21 garage incident even if the jury did not believe he was involved in the August 15 robbery; we agree. The testimony about the August 21 police observation of the shotgun in Houston's garage was admissible only as evidence supporting the August 15 actual possession charge.

We cannot accept the Government's current argument that the August 21 event was a separate crime independent of the August 15 incident because doing so would result in a constructive amendment of the indictment which is "reversible per se." *United States v. Jara-Favela*, No. 11-40142, 2012 U.S. App. LEXIS 13426, at \*21 (5th Cir. June 27, 2012) (explaining that reversal is necessary on constructive amendment grounds if a jury instruction "allows the defendant to be convicted of a separate crime from the one for which he was indicted"). We decline to accept an argument in support of an instruction that would result in an error of such magnitude. Examining the constructive possession instruction, then, we conclude it was improperly given and confusing to the jury because there was no evidence of constructive possession on August 15. *Cf. Jones*, 484 F.3d at 789 (concluding that the case presented at trial was solely as to actual possession where the relevant testimony stated only that the defendant physically possessed a firearm). Allowing the Government to argue the August 21 incident as a standalone event further compounded the error and confusion. We conclude that, under these circumstances, giving both instructions was error.

### 2. Alibi

Houston argues that the district court erred by refusing to give an alibi instruction to the jury despite his timely request for the same. "[W]e review the district court's refusal to give a requested jury instruction for an abuse of

discretion." *United States v. Laury*, 49 F.3d 145, 152 (5th Cir. 1995).[3] Reversal is thus proper if the requested instruction: "'(1) is substantially correct; (2) was not substantially covered in the charge actually given; and (3) concerns an important point such that failure to give it seriously impaired the defendant's ability to effectively present a given defense.'" *Id.* (quoting *United States v. Aggarwal*, 17 F.3d 737, 745 (5th Cir. 1994)). Reversal is only warranted "if the defendant was improperly denied an opportunity to convey his case to the jury." *Laury*, 49 F.3d at 152 (citing *United States v. Hudson*, 982 F.2d 160, 162 (5th Cir. 1993)).

"An alibi defense precludes the defendant's guilt by placing him, when the offense occurred, at a location different from that at which he allegedly committed the crime." *United States v. Chambers*, 922 F.2d 228, 240 (5th Cir. 1991). Houston argues that his testimony places him at home at the time the robbery occurred, thereby negating his ability to "possess" the shotgun at the scene. On appeal, the Government has abandoned its prior contention at trial that Houston's testimony does not constitute alibi evidence. Instead, the Government acknowledges that, "[a]t least two circuits have recognized that a defendant is entitled to an alibi instruction based upon the defendant's self-serving statements alone." (citing *United States v. Hairston*, 64 F.3d 491, 493-95 (9th Cir. 1995); *United States v. Hicks*, 748 F.2d 854, 856-57 (4th Cir. 1984)).

Nevertheless, the Government argues that the district court's failure to give the requested alibi instruction does not warrant reversal and is, at best,

---

[3] Houston argues that de novo review is appropriate, citing *United States v. Theagene*, 565 F.3d 911, 917 (5th Cir. 2009). That case involved the defense of entrapment, which is qualitatively different than an alibi defense. Entrapment is in the nature of confession and avoidance—essentially admitting the crime, but proffering a reason why the defendant should not be found guilty. By contrast, an alibi "defense" entails an inferential rebuttal negating an essential element of the prosecution's case—that the defendant was the person who committed the crime—by saying he could not have been that person as he was somewhere else. We conclude that abuse of discretion is the proper standard.

harmless error given the other evidence of Houston's guilt. In *Laury*, the defendant introduced alibi evidence and emphasized as much during closing argument. 49 F.3d at 152. The district court had also instructed the jury that it was required to weigh the evidence and judge the credibility of the witnesses. *Id.* This court thus concluded that, "[t]he general jury instruction, taken with Laury's closing argument, was sufficient to place the alibi defense before the jury, and the district court did not commit reversible error by failing to give the requested instruction." *Id.*

The Government argues that the circumstances in this case are similar. Houston introduced alibi evidence in the form of his own testimony at trial. During closing argument, his counsel emphasized that testimony. In addition, the district court gave a general instruction informing the jury that the Government had the burden of proof with respect to the essential elements of the offense charged and that the jury was responsible for weighing the evidence and determining the credibility of the witnesses. Nonetheless, *Laury* emphasized that "a determination of the adequacy of the charge must be made in the context of the full trial." *Id.* We conclude that the district court erred in failing to give an alibi instruction. We discuss whether the error is reversible below.

## B. Other Challenges

### 1. Prior Conviction

During his direct examination, Houston admitted to the felony underlying the § 922 prosecution—possession of a controlled substance with intent to deliver. On cross-examination, over objection, the Government addressed two other prejudicial issues it now concedes were impermissibly raised—a misdemeanor shoplifting conviction and revocation of Houston's probation based on that conviction. *See* FED. R. EVID. 609(a)(2) (evidence of misdemeanor convictions admissible to impeach if the "elements of the crime required proving . . . a dishonest act or false statement"); *United States v. Entrekin*, 624 F.2d 597,

598-99 (5th Cir. 1980) (shoplifting offense does not involve dishonesty or false statement).  This court reviews a district court's evidentiary ruling for abuse of discretion, subject to harmless error analysis.  *United States v. Girod*, 646 F.3d 304, 318 (5th Cir. 2011).  "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Insaulgarat*, 378 F.3d 456, 464 (5th Cir. 2004).  We agree with Houston and the Government that the district court committed error in allowing the admission of this evidence.

### 2. *McCray Confession*

Houston also argues that his right to a fair trial was compromised when the district court permitted the Government to ask about McCray's confession to the August 15, 2008, robbery in violation of the Confrontation Clause.  This court reviews Confrontation Clause objections de novo, subject to harmless error analysis.  *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008). "A defendant convicted on the basis of constitutionally inadmissible Confrontation Clause evidence is entitled to a new trial unless it was harmless in that there was no reasonable possibility that the evidence complained of might have contributed to the conviction."  *Id.* (brackets and internal quotation marks omitted) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "Accordingly, the government must demonstrate beyond a reasonable doubt that the tainted evidence did not contribute to the conviction."  *Id.* at 342.

Before trial, Houston filed a motion in limine seeking to prohibit the Government from introducing any post-arrest statements by Houston's brother, McCray.  The motion argued that since the statements were "testimonial" out-of-court statements, they could not be admitted without violating the Confrontation Clause because McCray was deceased and Houston had not had an opportunity to cross-examine him.  The district court granted the motion and

No. 11-20015

secured a commitment from the Government that it would not bring up McCray's confession absent "a solid reason that is supported by caselaw."

On cross-examination, however, the Government asked Houston whether McCray had pleaded guilty to the robbery and, without immediate objection, Houston answered, "I believe, yes, sir." The Government then asked, "And did you know he gave a confession to that crime?" Defense counsel immediately objected and asked to approach. At the bench conference, the district court stated that it would allow the Government's question, but no further inquiry.

The Sixth Amendment's Confrontation Clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). "Whatever else the term ['testimonial'] covers, it applies at a minimum . . . to police interrogations." *Crawford*, 541 U.S. at 68. In this case, McCray allegedly confessed to committing the robbery and made statements implicating Houston to police officers shortly following his arrest, and in a formal, video-taped interrogation. These circumstances indicate that McCray's statements were not meant to assist police in responding to an ongoing emergency, but rather were made in response to the police's effort to investigate past events in order to facilitate criminal prosecution. *See Davis*, 547 U.S. at 822. Accordingly, McCray's statements were testimonial and should have been barred from admission as dictated by the district court's ruling in limine.[4]

---

[4] Were this the only error at trial, we would have little difficulty concluding it was harmless because reference to McCray's confession was limited to that one question on cross-examination. While the Government impermissibly inquired into an area it should have known was off-limits, because it stopped short of raising the subject of McCray's implication of Houston in the robbery, this error, by itself, would be harmless.

No. 11-20015

## C. Were the Errors Harmless or Reversible?

We conclude that it is unnecessary to address each individual error because the synergistic effect of these errors as a whole severely prejudiced Houston and warrants a new trial. *See United States v. Riddle*, 103 F.3d 423, 425 (5th Cir. 1997) ("We are persuaded that the cumulative and interactive effect of four rulings requires that we reverse the judgment of conviction and remand for a new trial."). We have repeatedly eschewed the notion that a series of harmless errors can create reversible error through simple formulaic addition. *See, e.g.*, *United States v. Villarreal*, 324 F.3d 319, 328 (5th Cir. 2003). Cumulative error analysis evaluates "the number and gravity of the errors in the context of the case as a whole." *United States v. Valencia*, 600 F.3d 389, 429 (5th Cir. 2010). We recently emphasized the rarity of a cumulative error finding, a position from which this panel does not retreat: "The doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *United States v. Delgado,* 672 F.3d 320, 344 (5th Cir. 2012) (en banc). We conclude that this case involves such a "synergistic" error.

For example, in *Riddle*, the district court made a series of evidentiary errors that substantially  prejudiced the defendant's case. 103 F.3d at 434-35. The trial court erroneously allowed a government witness to testify far outside the scope of permissible lay testimony, barred a defense witness's expert testimony, and admitted prejudicial documents and extraneous testimony. *Id.* at 428-34. We highlighted that had these rulings operated in the defendant's favor, "a very different trial" would have resulted. *Id.* at 434. We therefore stated that "[l]ooking at the cumulative effect of the errors, we are persuaded that they are not harmless and require a new trial." *Id.* at 435.

Similarly here, the errors below cumulatively prejudiced Houston's ability to argue his case to the jury. Unlike cases where we have found no cumulative

11

error, all of the errors here caused confusion and prejudice that reached to the heart of the case—the identity of the perpetrator on August 15. Allowing the jury to find "constructive possession" on August 21 without regard to whether Houston "possessed" the shotgun on August 15 completely changes the case from identity at the time of the robbery—the indicted count that Houston defended—to control of the garage and its contents on August 21—a wholly separate (and unindicted) issue.

The focus of Houston's testimony was that he was not at the scene of the robbery. Because Houston testified, and the thrust of his defense relied on that testimony, Houston's credibility was paramount. Even if we assume that the jury was not confused by the constructive possession argument and properly focused on Houston's alleged actual possession on August 15, then the jury's credibility determination is the focal point of the case (vis-a-vis Janice's identification of Houston and Houston's alibi testimony). As such, the district court's allowance of the Government's impermissible impeachment evidence[5] and erroneous questioning about McCray's confession become critical errors. The district court's refusal to instruct the jury on Houston's alibi further prejudiced Houston's defense, leaving the jury with the impression that it could convict not on the strength of the Government's case, but on Houston's already erroneously tainted testimony. The synergistic effect of these errors impermissibly infringed on Houston's ability to put the Government to its burden of proof, and to convey to the jury his position that he was not at the scene of the August 15 robbery.

We recognize that even when there are a number of synergistic errors, we will still not reverse if the evidence of guilt is overwhelming. *See United States*

---

[5] Any opportunity to offset the prejudicial nature of the admission of Houston's prior misdemeanor conviction and probation revocation was substantially lost when the district court not only admitted the evidence, but failed to offer corrective instructions to remedy the errors. *Cf. United States v. Gracia*, 522 F.3d 597, 604 (5th Cir. 2008) (highlighting the usefulness of corrective measures in assessing trial court errors for harmlessness).

*v. Johnston*, 127 F.3d 380, 398-403 (5th Cir. 1997) (reversing for cumulative error as to only one defendant where his evidence of guilt was not as strong as against his co-defendants, yet multiple trial errors affected all defendants). The evidence of guilt here, however, is not strong enough to overcome the aforementioned cumulative error. Indeed, at oral argument the Government unequivocally conceded that its theory of constructive possession on August 21, not the actual possession on August 15, was the case it considered strongest, and even concluded its argument by asking the court to affirm based on constructive possession. As discussed above, we cannot accept the Government's "standalone" August 21 argument to support the conviction because to do so would allow an impermissible constructive amendment of the indictment. The Government makes no other argument about how the evidence was "overwhelming" or "strong" as to Houston's August 15 possession.[6]

Finally, in evaluating the effect of this error, we cannot ignore that the jury twice deadlocked on its verdict and deliberated for six hours in a case that only took eight hours to try. If the jury believed Janice, they could have easily convicted Houston as to the charged August 15 incident on that evidence alone. The fact that they apparently did not, and even twice informed the judge that they could not reach a verdict, further magnifies the errors the Government caused to be committed here. These cumulative errors, therefore, "so fatally infect[ed] the trial that they violate[d] the trial's fundamental fairness." *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009) (citation and internal quotation marks omitted).

---

[6] We agree that the car and gun found in Houston's garage on August 21 are circumstantial evidence against him as to his alleged actual possession on August 15. But because the Government's argument and the erroneous jury instruction likely confused the jurors as to this point, we cannot be sure that this evidence was used only to assess identity on August 15, and not to convict Houston for an unindicted "constructive" possession charge on August 21.

No. 11-20015

Accordingly, we REVERSE the judgment of conviction and REMAND for a new trial.