# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 7, 2012

No. 12-40220
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ARTURO ELIZONDO,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:04-CR-318-1

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Arturo Elizondo pled guilty to possessing an unregistered firearm. His sentence included a three-year term of supervised release. A condition of that release was a prohibition on committing any other crime. While on supervised release, Elizondo allegedly assaulted a woman with whom he was living. On the night of the alleged assault, the woman identified Elizondo as her attacker. She later recanted. When called to testify at Elizondo's revocation hearing, she

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40220

asserted her Fifth Amendment right against self-incrimination. The district court subsequently determined that Elizondo had committed a crime and revoked his supervised release. He appeals. We AFFIRM.

FACTS

On January 28, 2012, Trinity Paddock, a Corpus Christi police officer, responded to a 911 call. Upon arriving at the identified address, she noticed a woman, Belinda Garcia Calderon ("Garcia"), sitting in front of a residence.

Officer Paddock testified at the revocation hearing that Garcia said she had gotten into a fight with Arturo Elizondo, a man with whom she was romantically involved. Garcia said Elizondo had punched her in the face numerous times. Paddock testified that Garcia had a swollen nose and other injuries that were consistent with being punched. Paddock then said that Garcia explained that she bit Elizondo on the cheek to defend herself. Paddock also testified that Garcia did not want to fill out a police report because she was concerned for her safety.

Elizondo objected to these statements on due process grounds. His objections were overruled. Paddock then testified that she went to Elizondo's residence. When she arrived, Elizondo unsuccessfully attempted to barricade the door. Once inside, Paddock noticed marks on Elizondo's cheek that were consistent with his being bitten.

After Paddock testified, the government called Garcia. Before taking the witness stand, Garcia's court-appointed counsel informed the court that Garcia would invoke her Fifth Amendment right against self-incrimination. After being sworn and acknowledging she knew Elizondo, Garcia invoked the Fifth Amendment and refused to answer any other questions.

Elizondo did not call any witnesses in his defense, instead relying on a notarized letter Garcia sent to Elizondo's probation officer two days after the alleged assault. In the letter, Garcia recanted and stated that there was no

2

No. 12-40220

assault.  The letter explained that Garcia got into a fight while at a bar, and when she returned home Elizondo became upset with her behavior.  A verbal altercation ensued.  That argument angered her and she decided to falsely accuse Elizondo of assault as a kind of retribution.

The district court found that the government had proven by a preponderance of the evidence that Elizondo assaulted Garcia.  The court revoked his supervised release.  Elizondo appeals.

DISCUSSION

"A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that a condition of release has been violated." *United States v. Minnitt*, 617 F.3d 327, 332 (5th Cir. 2010).  This court reviews for abuse of discretion, subject to harmless-error analysis.  *See id.*  "[T]he constitutional challenge about the right of confrontation of adverse witnesses is reviewed *de novo*." *United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995).

Although supervised release hearings have characteristics in common with typical criminal prosecutions, they are not formal trials.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  This difference manifests itself in a number of ways.  For one, the Federal Rules of Evidence do not apply with the same force.  *Grandlund*, 71 F.3d at 509-10.  Nor is there the analogous right of self-representation.  *United States v. Hodges*, 460 F.3d 646, 650 (5th Cir. 2006).  Of more importance here, the defendant does not have a Sixth Amendment right to confront adverse witnesses.  *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006); *see also Grandlund*, 71 F.3d at 510.  The ability is not totally absent, however.  The Due Process Clause of the Fifth Amendment has been interpreted to provide for "a qualified right to confront and cross-examine adverse witnesses." *Grandlund*, 71 F.3d at 510.  Yet, because the right is qualified, it can be overcome upon a district court's determination that good cause exists.  *Id.*

No. 12-40220

If a specific finding of good cause is made, the district court must also state on the record its reasons for that finding. *Id.* at n.6.

Elizondo argues that his due process rights were violated because he was unable to cross-examine Garcia and the district court failed to make any finding of good cause. The government contends, though, that Elizondo did not sufficiently explain his objection and we should review only for plain error.

"To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). Here, Elizondo's counsel objected "to the introduction of the Offense Report, and specifically the statements of the alleged victim. The basis of that objection is Mr. Elizondo's due process right to minimal constitutional protections at revocation hearings, which include the right to confront and cross-examine witnesses." Counsel reiterated the objection multiple times during Officer Paddock's testimony. That level of specificity was sufficient to preserve the issue. *See United States v. Cherry*, 50 F.3d 338, 342 n.8 (5th Cir. 1995); *see also United States v. Carrion*, 457 F. App'x 405, 410 n.1 (5th Cir. 2012).

The government next argues that Elizondo's due process rights were not violated because he had the opportunity to cross-examine Garcia. The government notes that Garcia was in the courtroom and testified, albeit briefly. This, the government contends, is sufficient to protect any rights that Elizondo had in a revocation hearing. Elizondo points out that Garcia refused to testify regarding any matter, perhaps due to the inconsistencies between her statement to Officer Paddock and her written recantation. He asserts that his rights were violated because he had no meaningful opportunity to cross-examine her.

We reject the government's argument that the right to cross-examine can be met so easily. In criminal trials, courts consistently hold that a witness who invokes her Fifth Amendment right against self-incrimination is "unavailable."

No. 12-40220

*United States v. Brooks*, 681 F.3d 678, 712 n.29 (5th Cir. 2012); *United States v. Vernor*, 902 F.2d 1182, 1186 (5th Cir. 1990) *overruled on other grounds recognized by United States v. Flores*, 985 F.2d 770, 774-75 (5th Cir. 1992). Although those cases involve criminal prosecutions where the defendant has more robust constitutional rights, they can still be helpful when determining whether a defendant's more limited due process rights were violated at a revocation hearing. In criminal trials, a concern naturally arises that the defendant will not have the opportunity to cross-examine an unavailable witness and "test the truth of the witness's direct testimony." *United States v. Kimble*, 719 F.2d 1253, 1257 (5th Cir. 1983).

That concern is present here, as well. Thus, the right may be violated when a defendant cannot question a physically present witness. Although Garcia was in the courtroom and answered a question, her assertion of her constitutional privilege rendered her unavailable and prevented Elizondo from having the opportunity to cross-examine her.[1] While this conclusion would usually require reversal in a criminal proceeding, the right to cross-examine in revocation hearings is not co-extensive with a defendant's rights at trial. As explained, Elizondo's right to cross-examine may be overcome by a showing of good cause. *Grandlund*, 71 F.3d at 510.

---

[1] Garcia improperly invoked her right. Although no party objected, the district court should have determined the legitimacy and scope of the invocation. *United States v. Mares*, 402 F.3d 511, 514 (5th Cir. 2005). "A witness may be totally excused only if the court determines that he could legitimately refuse to answer essentially all relevant questions." *Id.* (quotation marks omitted). But the error was harmless. Garcia's statement to Paddock was wholly inconsistent with the events described in the notarized letter she sent to the probation officer. As one statement had to be untrue, any answer Garcia gave at the hearing could have established that she made a false statement under state or federal law. *See* Tex. Penal Code § 37.08(a); 18 U.S.C. § 1001. Accordingly, because Garcia could have – and likely would have – invoked her right in response to any relevant question, the error was harmless. *See United States v. Highgate*, 521 F.3d 590, 594-95 (6th Cir. 2008).

The district court's failure to make applicable findings on good cause "may be found to be harmless error where good cause exists, its basis is found in the record, and its finding is implicit in the court's rulings." *Id.* The government does not analyze the possible good cause. It instead relies solely on its argument that Elizondo had the opportunity to cross-examine Garcia, thus extinguishing the requirement to prove good cause. We have already rejected the argument that Garcia was available.

Analyzing good cause is made using "a balancing test which weighs the defendant's interest in the confrontation of a particular witness against the government's interest in the matter. A critical consideration is the indicia of reliability of the challenged evidence." *Id.*

Elizondo's interest in finding a means to undermine the putative victim's initial statements is certainly a strong one. We do not perceive that interest to be joined to any meaningful opening for making such a challenge. Two versions of events were available. The one that fit with the physical facts was that Garcia had bitten Elizondo, which Officer Paddock's view of Elizondo's face corroborated but did not conclusively prove. That bite had no similar connection to the alternative version in Garcia's recantation. Elizondo's explanation that the injury to his cheek resulted from falling against his bed was in evidence. The plausibility of a conveniently timed fall to deny the victim's statements about a bite could be weighed by the district court.

The government's interest in using Garcia's initial statements was to offer the evidence gained immediately after the events, which was consistent with the physical evidence. The later recantation and refusal to testify were consistent with the victim's initial statements that she feared the defendant.

No doubt the evidence that was admitted without cross-examination at this revocation hearing was critical to the central issue before the court, namely, whether Elizondo had violated the terms of his supervised release. Weighing the

interest of Elizondo in cross-examining must be done in the context of the specific facts.  The evidence was significant, but we do not see that cross-examination would have provided a significant benefit. On the other hand, Garcia's statement was what explained the beating she had received.  Thus, the government's interest in the evidence weighed strongly.

Elizondo's qualified due process rights were not violated.

Elizondo also contends that the evidence, even with Garcia's statement, was insufficient to support revocation.  We use an abuse-of-discretion standard to review the decision to revoke supervised release.  *United States v. Spraglin*, 418 F.3d 479, 480 (5th Cir. 2005).  Elizondo focuses on the fact that Garcia recanted her initial statements.  The district court had all the evidence before it, and choosing Garcia's original version as corroborated by the physical evidence was not an abuse of discretion.

For the first time on appeal, Elizondo also argues the district court should have made written findings explaining the reasons for the revocation. Due process requires written findings to explain the revocation of parole.  *Morrissey*, 408 at U.S. 488-89.  We have held there should also be findings for revocation of supervised release.  *United States v. Ayers*. 946 F.2d 1127, 1129 (5th Cir. 1991). Elizondo did not object, so we review the failure to make findings for plain error. *United States v. Magwood*, 445 F.3d 826, 828 (5th Cir. 2008).  When the reasons for the revocation are obvious from the record, the absence of findings will be considered harmless.  *United States v. McCormick*, 54 F.3d 214, 220 (5th Cir. 1995).  The district court stated that Elizondo had violated the terms of his supervised release.  The court also said this: "Other than a broken nose and black eyes, all is well." That comment is a clear statement that the district court accepted that Elizondo had assaulted Garcia.

There was no plain error in the failure to make findings on the record.

AFFIRMED.