ACCEPTED
06-15-00114-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/16/2015 3:36:38 PM
DEBBIE AUTREY
CLERK

No. 06-15-00114-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
11/16/2015 3:36:38 PM
DEBBIE AUTREY
Clerk

## IN THE COURT OF APPEALS
## SIXTH DISTRICT OF TEXAS
## AT TEXARKANA

## GEORGE WASHINGTON SHARPER
## APPELLANT
## v.
## THE STATE OF TEXAS,
## APPELLEE

## On Appeal from the 196th Judicial District Court
## Of Hunt County, Texas
## Trial Court Cause 28240
## Hon. Joe Clayton, Judge Presiding

## APPELLANT'S BRIEF

Katherine A. Ferguson (SBN 06918050)
Renshaw, Davis & Ferguson, L.L.P.
2900 Lee Street, Suite 102
P.O. Box 21
Greenville, Texas  75403-0021
Telephone:  (903) 454-6050
Facsimile:  (903) 454-4898
Email:  rdflawoffice@yahoo.com

## ORAL ARGUMENT NOT REQUESTED

## IDENTITIES OF PARTIES AND COUNSEL

| | |
|---|---|
| Appellant: | George Washington Sharper |
| Defense Counsel at Trial: | Jack L. Paris, Jr.<br>3101 Joe Ramsey Blvd., Suite 101<br>Greenville, Texas 75404 |
| Appellant's Attorney on Appeal: | Katherine A. Ferguson<br>Renshaw, Davis & Ferguson, L.L.P.<br>2900 Lee Street, Suite 102<br>P.O. Box 21<br>Greenville, Texas  75403-0021 |
| Appellee's Attorney at Trial: | Calvin Grogan<br>Assistant District Attorney<br>Hunt Co. District Attorney<br>P.O. Box 441<br>Greenville, Texas 75403-0441 |
| Appellee's Attorney on Appeal: | Calvin Grogan<br>Assistant District Attorney<br>Hunt Co. District Attorney<br>P.O. Box 441<br>Greenville, Texas 75403-0441 |
| Trial Judge: | Hon. Joe Clayton |

# TABLE OF CONTENTS

Identities of Parties and Counsel …………………………….…….…..…….ii

Table of Contents……………………………………………………………iii

Index of Authorities…………………………………….....................iv

Statement of the Case……………………………………….....................2

Issues Presented …………………………………………………………..2

Statement of Facts  ……………………………………………………2

Summary of the Argument ………………………………………… 6

Argument and Authorities …..………………………….....................8

ISSUE NUMBER ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       THE TRIAL COURT ERRED IN ADMITTING THE OUT OF COURT STATEMENT OF MARCUS STEPHENSON.

ISSUE NUMBER TWO  …………………………………………..16

       THE TRIAL COURT ERRED IN ADMITTING TESTIMOMY REGARDING AN EXTRANEOUS OFFENSE DURING THE GUILT-INNOCENCENCE PHASE OF THE TRIAL.

PRAYER………………………………………….....................21

CERTIFICATE OF SERVICE…..…………………………………...22

## INDEX OF AUTHORITIES

**Cases**

*Crawford v. Washington*, 541 U.S. 36, 52 (2004) ……………………………10

*Davis v. Washington*, 547 U.S. 813, 821 (2006)……………… …………..10

*U.S. v. Elizondo*, 502 Fed. Appx. 369, 372 (5th Cir. 2012)    ………...... …11

*U.S. v. Flores*, 985 F.2s 770, 780 (5th Cir. 1993) …………………………. 11

*U.S. v. Houston*, 481 Fed. Appx. 188, 193 (5th Cir. 2012) …………… . …19

*U.S. v. Owens*, 484 U.S. 554 (1988)  ……………………………………12

*United States v. Alvarado-Valdez*, 521 F.3d. 337, 341 (5th Cir. 2008) …….15

*Collazo v. State,* 623 S.W.2d 647, 648 (Tex. Crim. App. 1981)  …………17

*Jahanian v. State*,
     145 S.W.3d. 346, 350 (Tex. App. – Houston [14[th] Dist.] 2004)   …10, 13

*Langham v. State,* 305 S.W.3d 568 (Tex.  Crim. App. 2010)   ……….10, 15

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992)    …………....8

*O'Rarden v. State*, 777 S.W.2d 455
                    (Tex. App. – Dallas 1989, pet. ref'd)    ………………8

*Ransom, v. State*, 503 S.W.2d 810 (Tex. Crim. App. 1974) ………………18

*Simmons v. State*, 457 S.W.2d 570 (Tex. Crim. App. 1970)   …………..20

*Snowden v. State*, 353 S.W.2d 815 (Tex. Crim. App. 2011)   ……………15

*Walker v. State*, 406 S.W. 3d 590, 596 (Tex. 2013) ………………………13

**Statutes and Rules**

TEX. RULE APP. P. 33  …………………………………………………8

No. 06-15-00114-CR

---

**IN THE COURT OF APPEALS
SIXTH DISTRICT OF TEXAS
AT TEXARKANA**

---

**GEORGE WASHINGTON SHARPER
APPELLANT**

**v.**

**THE STATE OF TEXAS,
APPELLEE**

**On Appeal from the 196th Judicial District Court
Of Hunt County, Texas
Trial Court Cause No. 28,240
Hon. Joe Clayton, Judge Presiding**

---

**APPELLANT'S BRIEF**

---

TO THE HONORABLE COURT OF APPEALS:

NOW COMES Appellant, GEORGE WASHINGTON SHARPER, and respectfully submits this brief in support of his appeal of the judgments of the 196th Judicial District Court of Hunt County, Texas, the Honorable Joe Clayton presiding.

## STATEMENT OF THE CASE

The Appellant, GEORGE WASHINGTON SHARPER, was charged in Cause No. 28,240 with the offense of capital murder. (CR #15-16). Appellant plead "Not Guilty." The State of Texas was not seeking the death penalty; if found guilty the sentence would be life in the Texas Department of Corrections Institutional Division. Thereafter, a jury was empanelled and the case was tried on GEORGE WASHINGTON SHARPER's plea of not guilty. After four days of testimony, the jury convicted GEORGE WASHINGTON SHARPER of capital murder. Thereafter, the Court sentenced GEORGE WASHINGTON SHARPER to life in prison without parole. Appellant filed a Motion for New Trial which was heard and denied. (CR #216-253; #318) This appeal is taken therefrom.

## ISSUES PRESENTED

ISSUE NUMBER ONE: THE TRIAL COURT ERRED IN ADMITTING THE OUT OF COURT STATEMENT OF MARCUS STEPHENSON.

ISSUE NUMBER TWO: THE TRIAL COURT ERRED IN ADMITTING TESTIMOMY REGARDING AN EXTRANEOUS OFFENSE DURING THE GUILT-INNOCENCENCE PHASE OF THE TRIAL.

## STATEMENT OF FACTS

GEORGE WASHINGTON SHARPER (hereinafter, "Appellant") was indicted for the offense of capital murder (CR #15).

On June 27, 2007, the Greenville Police Department responded to a 911 call regarding a shooting at 3408 Henderson in Greenville, Texas. (RR Vol. 5, 23:19-22) Upon arrival Officer Phillip Spencer of the Greenville Police Department ("GPD") found David Olivares, a Hispanic male, (hereinafter "the victim") with a single gunshot wound to the chest. (RR Vol. 5, 26:20-25) The victim was lying just inside of the front door of the residence, and there was a metal storm door with broken glass at the bottom. (RR Vol. 5, 43:11-19) The victim was non-responsive but still breathing. (RR Vol. 5, 44:1-2) The officers assessed the body to see if there were more wounds; after moving the body the victim stopped breathing and the GPD officers began CPR. (RR Vol. 5, 27:13-19) There were some other Hispanic males present at the residence. (RR Vol. 5, 44:7-9) The victim was taken to the Hunt Regional Medical Center where he was pronounced dead by Justice of the Peace Aaron Williams. (RR Vol. 5, 46:10-47:20)

Armando Torres Soto lived at 3408 Henderson with the decedent and several other Hispanic males. (RR Vol. 5, 72:6-23) Mr. Soto testified he was unaware of any enemies that the victim may have had. (RR Vol. 5, 75:1) The victim slept in the living room of the house. (RR Vol. 5, 75:15-

16) On the day of the shooting, a female showed up who made threats against the victim. (RR Vol. 5, 77:7-11) Mr. Soto had seen her at the house before (RR Vol. 5, 80:11-14) asking for money (RR Vol. 5, 80:23-25) and knew that Uzzivil Torres, another resident, had seen and heard the woman threaten the victim. (RR Vol. 5, 79:2-7) Mr. Soto knew the woman only by the nickname "La Diabla." (RR Vol. 5, 92:10-11) Another person, Uncle Canuto, was visiting the residence and was present at the time of the shooting, but became frightened afterward and returned to Mexico. (RR Vol. 5, 112:16-113:5)

Roberto Olivares also resided in the house the victim, who was his cousin. (RR Vol. 5, 116:14-18) He was asleep when his cousin was shot. (RR Vol. 5, 119:8-9) The day after the shooting, Mr. Olivares was shown a police line-up and picked out Carla Thornton, the woman he knew as Vanessa but whom the others called "La Diabla" as the person who had been to the house before. (RR Vol. 5, 121:13; 123:3-5; 125:23-126:10)

Lt. William Cole of GPD testified that he also responded to the scene of the shooting. He testified that three shell casings were recovered (RR Vol. 5, 187:11-188:1) and that the door was damaged as if someone had shot through it (RR Vol. 5, 189:8-17) Lt. Cole spoke with the other residents,

who told him about the woman "La Diabla" and Cole listed Vanessa as a suspect in the case. (RR Vol. 5, 195:13-209:16)

Steve Walden, a sergeant in the Criminal Investigations Division at GPD, testified that he recovered $300.00 in cash, some checks and other property of the victim from the victim's car at the residence. (RR Vol. 5, 219:10-226:7)

Carla Thornton testified that she knew Appellant because Appellant was her daughter's husband. (RR Vol. 6, 45:5-15) Thornton testified that Appellant and Markus Stephenson allegedly told her that they had killed a guy (RR Vol. 6, 83:6-8). Thornton also testified that she told police where they could find the gun used in this offense because it had been used by Appellant in another robbery. (RR Vol. 6; 85:20 – 86:6; 13-18; 87:1-11)

William Ball, a Commerce peace officer, testified that he was called as backup on July 23, 2007 for a felony stop regarding a possible robbery (RR Vol. 6, 123:16-124:15) Ball stated that Appellant was one of three individuals in the car that was stopped. (RR Vol. 6, 125:16-17) Ball testified that upon a search of the vehicle, he recovered a silver or chrome .380 semiautomatic pistol in the back passenger floor area of the car. (RR Vol. 6, 127:1-16) (SX 16B) Officer Neil Johnson with the Commerce Police Department took custody of the gun from Ball. (RR Vol. 6, 140:7-13)

Wade Thomas, a forensic scientist with the Department of Public Safety crime lab who specializes in firearms and tool marks, performed an analysis of SX16B as well as the bullets recovered from the scene and the body of the victim. (RR Vol. 6, 152:9-159:8) Thomas testified that the weapon that was fired at the victim is the same weapon as SX16B. (RR Vol. 6, 165:2-17)

Markus Ladane Stephenson was called to testify at Appellant's trial. Stephenson immediately claimed his privilege against self-incrimination. (RR Vol. 6, 192:12) The State continued to question Stephenson and he continued to invoke the Fifth Amendment. (RR Vol. 6, 192:15-16) The Court instructed Stephenson to answer the State's questions. (RR Vol. 6, 193:2-3; 9-10; 14-15; 19) Stephenson then claimed he could not remember his prior statements and the Court admitted a redacted copy of a transcript of Stephenson's statement to the police. SX 18

Officer Warren Mitchell of the Greenville Police Department testified about his interview with both Thornton and Stephenson.

## SUMMARY OF THE ARGUMENT

The Appellant was tried for capital murder. At trial, the State offered the testimony of an alleged co-actor, Markus Stephenson ("Stephenson"). When called to testify, Stephenson invoked his right against incrimination

under the 5th Amendment to the Constitution of the United States of America.  Stephenson indicated that although he had pled to the charge, he was in the process of appealing his conviction and had sought the assistance of writ attorneys.  Stephenson's invocation of his privilege against self-incrimination rendered him unavailable to testify.  The State then entered into evidence the statement Stephenson had given to law enforcement officers regarding the offense.  Appellant had no prior opportunity to cross-examine Stephenson on his prior statement, and therefore the admission of this statement violated Appellant's right to confront and cross examine the witnesses against him.  The admission of the statement of Stephenson was clearly harmful, as the testimony of Stephenson was the only direct evidence of the aggravating circumstance necessary to make the case one for capital murder rather than just murder.

The Trial Court also erred in admitting testimony regarding an extraneous offense of Appellant.  The State offered testimony that approximately one month after the underlying offense, Appellant committed an armed robbery.  The allegation was that Appellant used the same weapon in that extraneous offense as used in the underlying charge.  However, there was no evidence that Appellant was ever convicted of that offense or that the weapon used in this case was the same as in the extraneous offense.  The

Trial Court initially allowed Carla Thornton to testify about the offense, but later ruled further evidence of the extraneous offense would be too prejudicial. By allowing the testimony of Carla Thornton on the extraneous offense, the jury was allowed to consider evidence of Appellant's criminality in general as a basis for convicting him of the underlying offense.

## ARGUMENT

ISSUE NUMBER ONE: THE TRIAL COURT ERRED IN ADMITTING THE OUT OF COURT STATEMENT OF MARCUS STEPHENSON.

*Preservation of Error*

Texas Rule of Appellate Procedure 33.1(a) sets forth the standards for preserving a complaint for appellate review. First, the record must reflect that the complaint was made to the trial court by a timely request, objection or motion that states the grounds for the request with specificity and the trial court ruled on the request. TEX. R. APP. P. 33.1(a). "As regards specificity, all a party has to do to avoid the forfeiture of a complaint on an appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). The request may be made orally. *O'Rarden v. State*, 777 S.W.2d 455, 460 (Tex. App. – Dallas

1989, pet. ref'd) (Holding that oral motion for continuance preserved complaint for appellate review.)

The objection to the admission of Stephenson's testimony properly preserved the Confrontation Clause violation for appellate review. Appellant's trial counsel made a timely, specific objection to the admission of the testimony of Stephenson. Appellant's trial counsel made the following objections:

"There are constitutional problems as far as that kind of evidence, because the issue of - well, first of all, that is hearsay, but beyond that there's the confrontation and cross examination." (RR Vol. 6, 201:17-19)

"Your Honor, I think this issue really has been addressed by the Supreme Court of the United States, starting with Crawford versus Smith and then going to Davis versus Washington, Hammond versus Indianan and – and it all has to do with the Sixth Amendment, right to confrontation of witnesses and – and the bright line that is drawn in Crawford and the cases that follow, that helped

define it, Davis versus Washington and Hammond versus Indianan." (RR Vol. 6, 206:12-19)

Therefore the error in admitting Stephenson's prior statement in violation of the Constitution has been properly preserved for appeal.

*Admission of Prior Statement Violated Appellant's Sixth Amendment Right*

The admission of Stephenson's prior statement violated Appellant's right to confrontation and cross examination of witness under the 6th Amendment to the Constitution of the United States of America. In *Crawford v. Washington*, the Supreme Court held the Sixth Amendment confrontation right applies not only to court testimony but also to out of court statements that are testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 52 (2004) It is clear that the interview of Stephenson by law enforcement officials was a testimonial statement. "Whatever else the term covers, it applies at a minimum . . . to police interrogations." *Id* at 68. *See also Langham v. State,* 305 S.W.3d 568,576 (Tex. Crim. App. 2010); *Jahanian v. State*, 145 S.W.3d. 346, 350 (Tex. App. – Houston [14th Dist.] 2004) (Statement given by suspect to police was testimonial in nature). It is also clear that Appellant's counsel did not have a prior opportunity to cross examine Stephenson about the prior statement. *See Davis v. Washington*,

547 U.S. 813, 821 (2006) (Cannot admit prior statement at trial who is unavailable unless defendant had prior opportunity to cross-examine.)

When Stephenson was called as a witness at trial, Stephenson immediately invoked his right against self-incrimination. (RR Vol. 6, 192:12) Stephenson invoked his right against self-incrimination numerous times. Stephenson testified that he was in the process of trying to appeal his conviction as a co-actor on this offense. (RR Vol. 7, 31:1-18).

Stephenson's invocation of his 5th Amendment rights rendered him "unavailable" to testify for purposes of *Crawford*. *U.S. v. Flores*, 985 F.2d 770, 780 (5th Cir. 1993) (Invocation of 5th Amendment rendered declarant unavailable and prior statements to law enforcement violated confrontation clause); *U.S. v. Elizondo*, 502 Fed. Appx. 369, 372 (5th Cir. 2012) ("In criminal trials, courts consistently hold that a witness who invokes her Fifth Amendment right against self-incrimination is 'unavailable.'")

"In criminal trials, a concern naturally arises that the defendant will not have the opportunity to cross-examine an unavailable witness and 'test the truth of the witness's direct testimony.'" *Id*. "The right may be violated when a defendant cannot question a physically present witness." *Id*. Here, Stephenson was physically present at the trial, but his invocation of his rights made him unavailable. When the Trial Court ordered Stephenson to

answer, he stated in response to numerous questions that he couldn't remember making the prior statements to law enforcement. (RR Vol. 6, 194:6, 21; 195:1, 6, 9, 11, 20;197:13-14, 18, 23, 198:1, 6, 10, 13, 16, 20, 24; 199: 2).

The State may focus on Stephenson's claim of lack of memory to argue that a feigned loss of memory does not render a witness unavailable for confrontation clause purposes. *U.S. v. Owens*, 484 U.S. 554 (1988) However, before any memory issues arose, Stephenson had invoked his right against self-incrimination. The Trial Court ordered Stephenson to answer without exploring the basis of Stephenson's claim. Stephenson had pled and been convicted of that offense; however, Stephenson was also in the process of challenging that conviction with writ attorneys. (RR Vol. 7, 31:10; MNT X2, RR Vol. 9, 76:6) Stephenson was still in jeopardy and answering the questions could impact his appeal. Therefore, Stephenson's proper invocation of his rights rendered him unavailable. His prior statement to law enforcement could only be admitted if Appellant had a prior opportunity to confront and cross examine him.

It is uncontested that Appellant did not have an opportunity to confront and cross-examine Stephenson about his prior statement. The fact that Stephenson's prior statement might have been admissible as an attempt

to refresh his recollection does not change this analysis. "[E]ven when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause." *Walker v. State*, 406 S.W. 3d 590, 596 (Tex. 2013) "The Constitution simply does not permit the admission of a testimonial statement of a witness unless . . . the defendant had a prior opportunity for cross-examination. *Jahanian*, 145 S.W.3d at 350.

*Harm Analysis*

Because the admission of the statement by Stephenson (SX 18) creates a constitutional error, this Court must reverse unless it determines "beyond a reasonable doubt that the error did not contribute to the conviction . . . ." *Id*.

Here, the primary evidence against Appellant that he committed capital murder is the prior statement of Stephenson in S X 18. The State continuously argued that the statement of Stephenson proved the aggravating element necessary for the case to be capital. The State argued:

> "Because you've got State Exhibit Number 18 that *tells you what the intentions was*. This isn't some – this isn't from some police officer who you might, you know, think maybe

he's got an agenda and wants to get – *this is from the co-actor himself . . . ."* (RR Vol. 8, 6:12-16) (emphasis added)

"In fact, *the co-actor's statement talks about a struggle at the door. That's also burglary of a habitation . . . ."* (RR Vol. 8, 8, 7-8) (emphasis added)

"Stephenson says, *in that transcript, what they were doing that night.* They intended to go down to hit a lick off of these Mexicans that lived down the street. . . . " (RR Vol. 8, 36:17-19) (emphasis added)

The State in closing argument concedes that the only evidence of the aggravating circumstance necessary to make this case a capital murder is the transcript of Stephenson: "You twelve have to decide, has the State met its burden of proof, to prove beyond a reasonable doubt the offense of capital murder, considering all the evidence. And I ask you, there is no evidence that it is just murder. . . . If you're going to go that far, then that means *why don't you consider what Stephenson* said before he was arrested and charged with this, *which means they were going to commit the robbery*." (RR Vol. 8, 37:3-15)

"A defendant convicted on the basis of constitutionally inadmissible Confrontation Clause evidence is entitled to a new trial unless it was

harmless in that there was no reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Alvarado-Valdez*, 521 F.3d. 337, 341 (5th Cir. 2008). "Accordingly, the [State] must demonstrate beyond a reasonable doubt that the tainted evidence did not contribute to the conviction." *Id.* at 342. *See Snowden v. State*, 353 S.W.2d 815 (Tex. Crim. App. 2011).

As is made clear by the State's closing arguments cited above, the only evidence of the aggravating circumstance that elevated this offense to capital murder was the prior statement of Stephenson to law enforcement in SX 18. Without the statement of Stephenson, the evidence is legally and factually insufficient to uphold a conviction for capital murder, because there is no evidence of the aggravating circumstance other than the statement of Stephenson in SX 18.

The question for this Court is not whether the verdict was support by evidence. Instead, the question is the likelihood that the constitutional error was a contributing factor in the jury's deliberations; that is, whether the error adversely affected the integrity of the process leading to the decision. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) Given the emphasis placed by the State on SX 18 in its closing and the fact that there was no other evidence offered to support the aggravating circumstance, it is

inconceivable for the jury not to have considered the statement of Stephenson in determining that Appellant was guilty of capital murder rather than just murder. As a result, this Court should find that the constitutional error in admitting the statement of Stephenson (SX 18) was harmful.

Because the Trial Court erred in denying the Appellant's right to confront and cross examine the primary witness against him at trial and that error was harmful, this Court should reverse the judgment of conviction and order a new trial.

> ISSUE NUMBER TWO: THE TRIAL COURT ERRED IN ADMITTING TESTIMOMY REGARDING AN EXTRANEOUS OFFENSE DURING THE GUILT-INNOCENCENCE PHASE OF THE TRIAL.

*Preservation of Error*

Prior to the testimony of Thornton, counsel for Appellant strenuously objected to the admission of her testimony about an extraneous offense committed by Appellant. The Trial Court ruled that the State could elicit testimony from Thornton about this offense because it went to the issues of "identity, intent, motive, rebuttal of a defensive theory." (RR Vol. 6, 76:15-16). Trial counsel argued that the identity exception did not apply. (RR Vol. 6, 77:25-26:16) The Trial Court ultimately ruled that the probative value of the testimony about the extraneous offense "substantially outweighed" the prejudicial effect. (RR Vol. 6, 79:17-18)

The testimony of Thornton was that Appellant participated in another robbery using the same handgun used in this case. (RR Vol. 6, 85:20-86:1) She testified the Appellant and Stephenson told her about robbing a man named "Boo" in Commerce and that the police pulled them over shortly afterwards and recovered the weapon. (RR Vol. 6, 87:1-88:3) Other officers also testified that they made a stop on a vehicle in which Appellant was present and recovered the handgun used in this offense. (RR Vol. 6, 127:1-16) (SX 16B)

*Harm*

The trial court erred in allowing the statements of Thornton regarding Appellant's alleged robbery of "Boo." The Trial Court erred in admitting Thornton's testimony to prove the identity of the assailant in this case. "When identity has become a contested, material issue, as it did in this case, there must be a showing that the extraneous offense which was committed by the defendant was 'so nearly identical in method (to the instant offense) to earmark them as the handiwork of the accused. Here, *much more is demanded than the mere repeated commission of crimes of the same class . . .The device must be so unusual and distinctive as to be like a signature.'*" *Collazo v. State,* 623 S.W.2d 647, 648 (Tex. Crim. App. 1981) The allegation that Appellant may have committed an armed robbery one month

after the offense in question, using a similar handgun, is not so unique or distinctive as to qualify as a "signature" of his crimes. Furthermore, there is the requirement that "before any extraneous offense is admissible the offenses must be clearly proven and the accused shown to have been its perpetrator." *Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974)

In the instant case, the jury was given information by Thornton about a second crime committed by Appellant that was not proven. The State attempted to introduce certified copies of convictions, but the Trial Court reversed its earlier ruling and ruled that the prejudicial effect of this evidence (conviction for a robbery one month after the instant offense) outweighed its probative value. (RR Vol. 7, 18:1-2) Therefore, the jury heard that Appellant committed an armed robbery after the instant offense, and heard evidence the same gun was used. However, no evidence of a conviction for the offense, or even that the gun admitted into evidence in this case was the gun used in the extraneous case, was admitted into evidence. This error allowed the state to argue to the jury that Appellant's "constructive possession" of the weapon a month after this offense "completely changes the case from identity at the time of the [murder] – the indicted count that [Appellant] defended – to control [of a car and its contents one month later] – a wholly separate (and unindicted) issued. *U.S.*

*v. Houston*, 481 Fed. Appx. 188, 193 (5th Cir. 2012) The State argued to the jury that because of the testimony about the Commerce robbery to prove that Appellant committed the murder one month earlier. (RR Vol. 8, 14:1-10; 15:9-11) The State argued:

"She also seemed to know about the fact that they committed this robbery of a guy named Boo Pitts, over in Commerce. What independent corroboration do you have when she was telling that story to Warren Mitchell? I don't know. You had two Commerce officers come in here and tell you, *yeah, that actually happened. Three and a half weeks after this shooting, this capital murder, they went and committed a robbery in Commerce. ... That's how easy this case is*." (RR Vo. 8, 11:23-12:8) (emphasis added)

"And poor David Olivares lived in that house and *was a target that night.* So that's one reason why you got to hear about the Commerce robbery. Another reason you got to hear about it11 is because the gun used to murder David Olivares is found with the defendant, in the floorboard, three and a half weeks later. He hadn't gotten rid of the murder weapon. Still

carrying it around.  *Still committing more crime*."  (RR Vol. 8, 15:6-11) (emphasis added)

It is clear from the State's closing arguments that the State wanted the jury to find Appellant was the assailant, primarily because he was using the same weapon three weeks later.  However, no evidence was admitted (1) to prove that the Commerce robbery occurred; (2) that Appellant was the person who committed the robbery; or (3) that SX 16 was used in the Commerce robbery.  The State impermissibly used an unadjudicated extraneous offense to attempt to prove that Appellant intended to rob the victim in this case, and that Appellant was a participant in the crime.  This is not like *Simmons v. State*, 457 S.W.2d 570 (Tex. Crim. App. 1970) where a victim to a robbery identified the defendant and was subjected to a rigorous cross examination as to the identity of his assailant, rendering the admission of a later extraneous offense harmless.  Here, the identity of the perpetrator was hotly contested.  The admission of the extraneous offense allowed the State to impermissibly argue that Appellant was the assailant in this case because he participated in a robbery three weeks later.  This is improper. This Court should reverse Appellant's conviction and order a new trial.

## PRAYER

**WHEREFORE,** based upon the foregoing, Appellant prays his conviction be reversed and a new trial granted.

Respectfully submitted,

RENSHAW, DAVIS & FERGUSON, L.L.P

By:  /s/ Katherine A. Ferguson
Katherine A. Ferguson (SBN 06918050)

2900 Lee Street, Suite 102
P.O. Box 21
Greenville, Texas 75403-0021
Telephone:  (903) 454-6050
Facsimile:  (903) 454-4898
Email:      rdflawoffice@yahoo.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Appellant's Brief was sent by first class United States Mail, postage prepaid, to the Honorable Noble Walker, Hunt County District Attorney, P.O. Box 441, Greenville, Texas 75403-0441 on this the 16th day of November 2015.

I further certify that a true and correct copy of Appellant's Brief was sent by first class United States mail, postage prepaid and certified mail, return receipt requested, to GEORGE WASHINGTON SHARPER c/o William P. Clements Unit, 9601 Spur 591, Amarillo, Texas 79107-9606.

/s/ Katherine A. Ferguson
Katherine A. Ferguson

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

Pursuant to Texas Rule of Appellate Procedure 9.4, this certifies that this document complies with the type volume limitations because it is computer generated and does not exceed 15,000 words. Using the word count feature of Microsoft Word, the undersigned certifies that this document contains 3,843 words in the entire document, except in the following sections: caption, identities of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, certificate of service and certificate of compliance. This document also complies with the typeface requirements as it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Katherine A. Ferguson
Katherine A. Ferguson