ACCEPTED
06-15-00114-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/4/2015 9:58:30 AM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/4/2015 9:58:30 AM
DEBBIE AUTREY
Clerk

**GEORGE WASHINGTON SHARPER**
APPELLANT

§
§
§

v.

§    **No. 06-15-00114-CR**

§

**THE STATE OF TEXAS,**
APPELLEE

§
§
§

---

## STATE'S REPLY BRIEF

---

FROM THE 196TH DISTRICT COURT
HUNT COUNTY, TEXAS
TRIAL CAUSE NUMBER 28,240
THE HONORABLE JOE CLAYTON, JUDGE PRESIDING

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

**G CALVIN GROGAN V**
Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX 75403
(903) 408-4180
FAX (903) 408-4296
cgrogan@huntcounty.net
State Bar No. 24050695

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................2

TABLE OF AUTHORITIES...........................................................................3

STATEMENT OF CASE...............................................................................6

ISSUES PRESENTED....................................................................................7

SUMMARY OF THE STATE'S ARGUMENTS..................................... 7

STATEMENT OF FACTS ............................................................. 8

STATE'S RESPONSE TO POINT OF ERROR ONE ...........................13

    STANDARD OF REVIEW...........................................................13

    MARKKUS STEPHENSON WAIVED HIS FIFTH AMENDMENT
    RIGHT AND APPELLANT CANNOT CLAIM IT FOR HIM .....................13

    STATEMENTS AGAINST PENAL INTEREST .............................................17

    NO CONFRONTATION CLAUSE VIOLATION BECAUSE
    MARKKUS STEPHENSON FEIGNED MEMORY LOSS AT TRIAL ........17

STATE'S RESPONSE TO POINT OF ERROR TWO........................................20

    STANDARD OF REVIEW...........................................................20

    ADMISSION BY A PARTY OPPONENT .......................................................21

    STATE EXHIBIT NOS. 16B AND 100 ...........................................................24

    TRIAL COURT CONDUCTED A PROPER 404B BALANCE TEST ..........26

PRAYER.......................................................................................................28

CERTIFICATE OF SERVICE.......................................................................29

# INDEX OF AUTHORITIES

Federal Cases
*California v. Green,* 399 U.S. 149, 90 S.Ct. 1930 (1970)............................... 18
*Crawford v. Washington,* 541 U.S. 36, 52 (2004).............................. 17,19
*Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292 (1985)...................... 18
*Garner v. United States,* 424 U.S. 648, 655, 96 S.Ct. 1178 (1976)...................... 14
*Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136 (1984)...................... 14
*Mitchell v. United States,* 526 U.S. 314, 330, 119 S.Ct. 1307 (1999).................. 14
*United States v. Alvarado-Valdez,* 521 F.3d 337 (5th Cir. 2008).......................... 20
*United States v. Elizondo,* 502 Fed. Appx. 369 (5th Cir. 2012).......................... 20
*United States v. Flores,* 985 F.2d 770 (5th Cir. 1993) ............................. 20
*United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838 (1988)........................ 18-19

Texas Cases
*Alvarado v. State,* 912 S.W.2d 199 (Tex. Crim. App. 1995) .............................. 23
*Broxton v. State,* 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) ...................... 20
*Calloway v. State,* 743 S.W.2d 645, 650 (Tex. Crim. App. 1988)...................... 20
*Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)...................... 22
*Collazo v. State,* 623 S.W.2d 647, 648 (Tex. Crim. App. 1981).......................... 25
*Davison v. State,* 405 S.W.3d 682 (Tex. Crim. App. 2013)................................ 14
*Ex Parte Dangelo,* 376 S.W.3d 776, 781 (Tex. Crim. App. 2012)...................... 14
*Godwin v. State,* 899 S.W.2d 387 (Tex. App. – Houston [14th Dist.] 1995,
pet. refd)..........................................................................................22-23
*Grayson v. State,* 684 S.W.2d 691 (Tex. Crim. App. 1984) ............................... 16
*Green v. State,* 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996)........................ 21
*Hudson v. State,* 675 S.W.2d 507, 511 (Tex. Crim. App. 1984)...................... 20,28
*Jackson v. State,* 424 S.W.3d 140 (Tex. App. – Texarkana, 2014)...................... 21
*Lacy v. Lacy,* 922 S.W.2d 195 (Tex. App. – Tyler 1995) ................................. 17
*Lester v. State,* 120 S.W.3d 897, 900 (Tex. App. – Texarkana, 2003) ................ 17
*Montgomery v. State,* 810 S.W.2d 372, 387 (Tex. Crim. App. 1990)............. 21,25
*Moody v. State,* 827 S.W.2d 875, 889 (Tex. Crim. App. 1992)........................ 20
*Peoples v. State,* 928 S.W.2d 112 (Tex. App. – Houston [1st Dist.] 1996).......... 22
*Ransom v. State,* 120 S.W.3d 428, 433 (Tex. Crim. App. 1974) ...................... 24
*Rodriguez v. State,* 903 S.W.2d 405 (Tex. App. – Texarkana, 1995)................... 16
*Simmons v. State,* 457 S.W.2d 570 (Tex. Crim. App. 1970)............................. 25
*Smith v. State,* 595 S.W.2d 120, 123 (Tex. Crim. App. 1980)............................ 28
*Walter v. State,* 267 S.W.3d 883 (Tex. Crim. App. 2008) ............................... 16
*Walker v. State,* 406 S.W.3d 590,596 (Tex. App. - Eastland 2013).................... 17

*Woodall v. State*, 336 S.W.3d 634 (Tex. Crim. App. 2011).............................. 18-19

<u>U.S. Const., Texas Const., Texas Rules of Evidence</u>
U.S. CONST. Amend. 5 ............................................................................... 13
TEX. CONST. ART. 1 Sec. 10 (Vernon 2012)........................................... 13
TEX. RULES OF EVID. R.404(a)-(b) (Vernon 2011)................................ 24
TEX. RULES OF EVID. R. 801(e)(2) (Vernon 2014) ............................... 22
TEX. RULES OF EVID. R. 804(a) (West 2014)........................................ 15
TEX. RULES OF EVID. R. 803(24) (Vernon 2012)............................ 15-17

## IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

GEORGE WASHINGTON SHARPER     §
     APPELLANT                    §
                                 §

     v.                            §    **No. 06-15-00114-CR**
                                   §

THE STATE OF TEXAS,           §
     APPELLEE                    §

---

## STATE'S REPLY BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

      NOW COMES the State of Texas, Appellee, in this appeal from Cause No. 28,240 in the 196th District Court in and for Hunt County, Texas, Honorable Joe Clayton, Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Sixth District Court of Appeals in support of the judgment of conviction and sentence in the court below.

## Statement of Case

Appellant was indicted on June 22, 2012, for Capital Murder. CR Vol.1.p.15. Appellant was arraigned on November 28, 2012. CR Vol.1.p.9. Following an informal recusal request made by the Appellant, Honorable Judge Joe Clayton was assigned the case on September 12, 2013. CR Vol.1.p.39. On October 15, 2013, the State filed a Motion Waiving Death Penalty Punishment. CR. Vol.1.p.55. The case was set for pretrial on February 28, 2014, and trial on March 24, 2014. CR Vol.1.p.39. An agreed continuance was granted on February 24, 2014, and case was reset for jury trial on June 30, 2014. CR Vol.1.p.75. Another agreed continuance was granted on June 6, 2014, and case was eventually reset for jury trial on October 20, 2014. CR Vol.1.p.91. Appellant's continuance motion was granted on October 10, 2014, and case was reset for jury trial on February 23, 2015. CR Vol.1.p.95.

Appellant was found guilty by a jury as charged in the indictment on April 16, 2015. CR Vol.1.p.206. The Trial Judge assessed automatic punishment at life without parole. CR Vol.1.p.208. Appellant gave oral notice of appeal and filed a Motion for New Trial on May 18, 2015. CR Vol.1.p.215. The State filed its Response to Appellant's Motion for New Trial on June 16, 2015. CR Vol.1.p.254. After conducting an evidentiary

hearing, the Trial Court denied Appellant's Motion for New Trial on June 30, 2015. CR Vol.1.p.317. Appellant then gave written Notice of Appeal on July 10, 2015. CR Vol.1.p.318.

## ISSUES PRESENTED

**Issue 1. Did Trial Court commit reversible error in admitting out-of-court statements of co-actor Markus Stephenson?**

**Issue 2. Did the Trial Court abuse its discretion by admitting evidence of an extraneous offense during the guilt-innocence phase of trial?**

## SUMMARY OF THE ARGUMENT

1. Trial Court properly admitted co-actor Markkus Stephenson's out-of-court statements as statements against penal interest. There was no Crawford violation because Markkus testified at trial. Even if Markkus Stephenson had not waived his Fifth Amendment right against self-incrimination when he pled guilty, he would only be considered "unavailable" for questions concerning his involvement in other crimes, not Appellant's or his involvement in this specific crime.

2. Trial Court did not abuse its discretion by allowing Carla Thornton to testify about both the charged offense and an extraneous offense that connected Appellant to a handgun used in both crimes. Carla Thornton's credibility was a jury determination.

7

## Statement of Facts

On June 29, 2007, thirty-one year old David Olivares was found unconscious by Greenville Police Officer Phillip Spencer, just inside his front glass pane door. RR Vol.5.pp.43, 83, 140, 188; RR Vol.6.p.24; State Exhibit No. 30. David died that evening as a result of a single gunshot to the chest. RR Vol.5.pp.27, 47, 53, 147, 153; State Exhibit No. 4. Although no firearms were recovered at the crime scene, a single spent bullet was found lodged in the living room far wall, in a direct line from the front door. RR Vol.6.pp.29-30. Two shell casings were found inside David's front door, and a third shell casing was found on David's front screened porch. RR Vol.5.pp.187-90; RR Vol.6.pp.23-5. All of the firearms evidence was collected and submitted to the Department of Public Safety ("DPS") Crime Lab in Tyler for ballistics testing. RR Vol.6.p.34; State Exhibit Nos. 90A-90D. Dallas County Medical Examiner Dr. Janice Townsend-Parchman located pseudo-stippling on David's body during her autopsy, which was consistent with the bullet traveling through an object like a glass door before striking the body. RR Vol.5.pp.148, 172; RR Vol.6.p.26. Due to the presence of pseudo stippling, Dr. Townsend-Parchman was unable to estimate the firing distance. RR Vol.5.p.149. Once Greenville Police Department ("GPD") arrived at the crime scene, David never regained

consciousness and was unable to identify his killer. RR Vol.5.pp.27-30, 123. There were no eyewitnesses, but at least one of David's roommates heard the gunshots. RR Vol.5.p.82; RR Vol.7.p.65. According to David's roommate Armando Soto, he had no known enemies at the time of his death. RR Vol.5.pp.74, 87.

On June 29, 2007, two friends named Uzzivil Torres and Cleonel Rinconcillo visited David's house that afternoon but had left hours before the shooting. RR Vol.5.pp.76, 78, 118, 195. David's Uncle Cannuto may have also been at the house at the time of the shooting. RR Vol.5.pp.89, 112; RR Vol.7.pp.89-97. Greenville Police obtained a written affidavit from Uzzivil. RR Vol.5.p.205.

A few days after the shooting, David's roommates went down to GPD and participated in a photo lineup of possible suspects, as well as provided written statements. RR Vol.5.pp.80, 120; RR Vol.7.p.54. Armando identified a female suspect because both Uzzivil and law enforcement had told him that she may be a suspect. RR Vol.5.pp.80, 91, 197. Uzzivil had also said this woman had come by the house on June 29th and made threats. RR Vol.5.p.80. Prior to the photo lineup, Uzzivil had passed along the information about the female to law enforcement. RR Vol.5.p.195. This woman was known by David's roommates as "La Diabla," and by law

enforcement as Vanessa Stevenson Alexander RR Vol.5.pp.92, 94, 197, 200. Armando saw "La Diabla" at the house a few weeks before, but never with David. RR Vol.5.pp.80-1. Roberto Olivares picked out "La Diabla" as well because she was the only face he recognized. RR Vol.5.p.121. Roberto had last seen "La Diabla" at their house three months prior, and had never seen her with David. RR Vol.5.pp.122-23.

GPD Detective Warren Mitchell got assigned to the case. RR Vol.5.p.193. Besides "La Diabla", there were no suspects at this point in the investigation. RR Vol.7.pp.52, 60-65. Besides the firearms evidence found at the crime scene that was submitted to DPS for ballistics testing, the case went cold for over four years. RR Vol.5.pp.200, 208; RR Vol.6.p.154; RR Vol.7.p.45; State Exhibit Nos. 90A-90D; State Exhibit No. 21.

On September 26, 2011, Detective Mitchell interviewed Carla Thornton on an unrelated narcotics trafficking conspiracy. RR Vol.7.pp.38-39. At the time of the interview, Carla was in custody on federal charges at the Fannin County Jail. RR Vol.6.pp.84-5. Towards the end of the interview, Carla began to discuss a murder that occurred on her street several years earlier. RR Vol.7.p.117.

At the time of David's killing, Appellant and Markkus Stephenson lived in Carla's home on Henderson Street, just a few blocks down from the

crime scene. RR Vol.7.p.123. The night of David's murder, Carla observed Appellant and Markkus bust through her door without shirts and out of breath, claiming they had just killed a guy because they needed money. RR Vol.6.pp.81-2. Carla noticed a gun in Appellant's hand. RR Vol.6.p.81. Carla kept these observations to herself because of her daughter Courtney's relationship with the Appellant, and she did not want to be labeled a snitch. RR Vol.6.pp.83, 95.

Several months after the shooting, Carla overheard the Appellant talking about the gun used in the murder was seized by the Commerce Police Department in a robbery. RRVol.6.pp.87-8. Carla passed along this information to Det. Mitchell. RR Vol.6.p.85; RR Vol.7.p.42. Detective Mitchell went to the Commerce Police department to retrieve the firearm described by Carla and to review the Commerce Police Arrest Report for that 2007 robbery. RR Vol.7.p.42.

On July 23, 2007, Commerce Police conducted a traffic stop on a vehicle reported to be involved in a robbery. RR Vol.6.p.124. The vehicle had three occupants, including the Appellant in the rear passenger side seat. RR Vol.6.p.126. Commerce Officer Neal Johnson, the arresting officer, identified the three occupants which also included co-actor Markkus Stephenson. RR Vol.6.p.136. During a search of the vehicle, Officer Ball

found a chrome Davis Industries .380 semi-automatic handgun in the floorboard of the rear passenger seat. RR Vol.6.p.127; State Exhibit No. 16B. Officer Johnson identified the gun's serial number on his chain of custody label and secured it in the Commerce Evidence locker, where it sat for over four years. RR Vol.6.pp.138-9, 142.

Detective Mitchell then interviewed Carla's daughter Courtney Massey and Markkus Stephenson's uncle Herb Anderson. RR Vol.7.pp.70, 120. Courtney is also married to the Appellant (Carla's other daughter Raven Smith was the girlfriend of the co-actor Markkus Stephenson. RR Vol.6.p.45; RR Vol.7.pp.70, 79.

On December 9, 2011, Detective Mitchell submitted additional firearm evidence, including the handgun stored at the Commerce Evidence locker, to DPS for further ballistics testing. RR Vol.6.p.162, p.177; Vol.7.p.44; State Exhibit 28B; State Exhibit No. 16B. DPS Ballistics expert Wade Thomas issued his report on January 24, 2012, indicating that after ballistics testing was performed the newly submitted firearm was in fact the same weapon that fired the spent bullet and discharged the three shell casings found at the crime scene. RR Vol.6.p.164; State Exhibit No. 22.

Based upon Detective Mitchell's interview of Carla Thornton, a review of the Commerce Police Arrest Report for the July 23, 2007 robbery

involving the Appellant, and a review of the DPS Firearms report issued on January 24, 2012, he interviewed Markkus Stephenson at the Luther Unit of the Texas Department of Corrections on June 4, 2012. RR Vol.7.pp.34, 36. After Stephenson's interview with Detective Mitchell, he and the Appellant were charged with capital murder. RR Vol.7.p.36.

## ARGUMENT

**1. Markkus Stephenson's Statements from a Custodial Interview Properly Admitted as a Statement Against Penal Interest**

### a. Standard of Review

Appellant complains that when Markkus Stephenson invoked his Fifth Amendment Right, he became unavailable to testify at trial and thus implicated Appellant's Sixth Amendment Right to Confront witnesses. "No person shall be compelled in any criminal case to be a witness against himself or herself." U.S. CONST. Amend. 5; TEX. CONST. ART. 1 Sec. 10 (Vernon 2012).

### b. Markkus Stephenson Waived His 5th Amendment Right When He Pled Guilty

Markkus Stephenson stood charged with committing the same crime as the Defendant, but pled guilty to the lesser included offense of Murder on

13

February 18, 2013. RR Vol.12.pp.18-30. By pleading guilty, Markkus Stephenson knowingly and voluntarily waived certain constitutional rights, including his right against self-incrimination, his ability for a direct appeal, and his ability to file a writ for post-conviction relief. RR Vol.12.p.26. "A criminal defendant who enters a plea of guilty has by definition relinquished his ....Fifth Amendment privilege against self-incrimination." *Davison v. State*, 405 S.W.3d 682 (Tex. Crim. App. 2013). "[O]nce direct appeals are over, the defendant loses his right to assert his right against self-incrimination as to that specific crime." *Mitchell v. United States*, 526 U.S. 314, 330, 119 S.Ct. 1307 (1999); *See* Defendant Exhibit No. 1-MNT.

Even if Stephenson's Fifth Amendment privilege had not been waived, it applied only to incriminating statements against himself for future criminal prosecutions. *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136 (1984). "Unless the government seeks testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise." *Garner v. United States*, 424 U.S. 648, 655, 96 S.Ct. 1178 (1976). "The Fifth Amendment is not implicated where the compelled statements can no longer result in criminal liability." *Ex Parte Dangelo*, 376 S.W.3d 776, 781 (Tex. Crim. App. 2012). Stephenson was available for cross-examination for any questions regarding his involvement in this crime,

14

and more importantly for questions regarding the truthfulness of his statements against Appellant. Markkus Stephenson knew at the time he entered his guilty plea he would be called as a witness by the State and be expected to testify truthfully against Appellant for this specific crime. RR Vol.7.pp.29-30.

### c. Stephenson's Refusal to Testify

The State did not admit Stephenson's prior statements under Rule 804, which requires a showing of unavailability, but under Rule 803(24) that does not focus on the declarant's availability. TEX. RULES OF EVID. R. 803(24) (Vernon 2012). Markkus Stephenson was declared a hostile witness on the stand by the Trial Court, and refused to answer questions presented by the State. RR Vol.6.pp.192-98.

STATE: what are you in jail for? Let's start with that.
WITNESS: Before you waste my time or your time, I ain't got nothing to say.
STATE: Well, in a minute I'll ask the judge to ask you to answer questions.
WITNESS: I'll plead the fifth.
STATE: Well before you can plead the fifth, are you facing criminal charges?
WITNESS: I'm telling you, I ain't got nothing to say. You're wasting your time asking me questions.
STATE: Are you serving a life sentence for this case right now?
WITNESS: [no response]
COURT: Mr. Stephenson, you need to answer that question, because that does not put you in any jeopardy.
RR Vol.6.pp.192-93.

The Trial Court instructed Stephenson to only answer questions by the State that did not violate his Fifth Amendment right against self-incrimination; in other words any statements that would only implicate the Appellant and himself. *See Rodriguez v. State*, 903 S.W.2d 405 (Tex. App. – Texarkana, 1995); *Grayson v. State*, 684 S.W.2d 691 (Tex. Crim. App. 1984). Stephenson was not compelled to give any testimony that could incriminate him of any crime except for the murder to which he had already pled guilty. *See Grayson*, 684 S.W.2d at 695 (the Trial Court cannot compel a witness to answer unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken in asserting the privilege, and that the answer cannot possibly tend to incriminate the witness). The only substantive evidence admitted from Stephenson was a redacted transcript from Stephenson's custodial interview, and that evidence was only admitted as a Statement Against Penal Interest. *See* TEX. RULES OF EVID. R. 803(24) (Vernon 2012). "Self-exculpatory statements that shift the blame to another must be excluded, but self-incriminating and blame-sharing statements between a defendant and co-defendant are admissible." *Walter v. State*, 267 S.W.3d 883 (Tex. Crim. App. 2008).

### d. Stephenson's Statements Against Penal Interest

16

"In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. TEX. R. EVID. 803(24) (Vernon 2014); *See Lester v. State*, 120 S.W.3d 897, 900 (Tex. App. – Texarkana, 2003). All hearsay exceptions require showing of trustworthiness. *Lacy v. Lacy*, 922 S.W.2d 195 (Tex. App. – Tyler 1995). The State satisfied the two-prong requirement for admission under Rule 803(24): Stephenson's statement tended to expose himself to criminal liability (admitted to having a gun in his hand when the Mexican boy opened the door), and there were corroborating circumstances that clearly indicated the trustworthiness of the statement (Stephenson and Appellant lived together in Carla Thornton's house at the time of the murder). *See* State Exhibit No. 18; RR Vol.7.p.123.

### e. No Confrontation Clause Violation Because Markkus Stephenson Feigned Memory Loss at Trial

The Sixth Amendment confrontation right applies to out-of-court statements that are testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 52 (2004). "Even when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause." *Walker v. State*, 406 S.W.3d 590, 596

17

(Tex. App. – Eastland 2013). The State concedes that Markkus Stephenson's statements to Det. Mitchell triggered Sixth Amendment protection, but disagree that Appellant's right to confrontation was violated – Markkus Stephenson testified.

The Supreme Court has generally rejected the notion that a present and testifying witness is nevertheless absent for confrontation purposes if the witness suffers from memory loss. In *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838 (1988), the Supreme Court directly addressed the ultimate question of whether a Confrontation Clause violation could be founded upon a witness's memory loss. *Id.* at 558–61, 108 S.Ct. 838; *See generally California v. Green,* 399 U.S. 149, 90 S.Ct. 1930 (1970); *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292 (1985) (per curiam). In *Owens,* the victim testified that while he recalled telling the detective in the hospital that appellant was his attacker, he had no actual memory of the event. *Id.* at 556–57, 108 S.Ct. 838. "The Court stated that an opportunity for effective cross-examination is not denied merely because the witness suffers memory loss, and it is sufficient that the defendant has an opportunity to expose and probe the memory loss." *Id.* at 559–60, 108 S.Ct. 838. Texas has followed Supreme Court precedent, even after the 2004 Supreme Court Crawford v. Washington decision. *See Woodall v. State,* 336 S.W.3d 634, 644 (Tex.

Crim. App.2011) (holding we agree with those cases and believe that memory loss does not render a witness "absent" for Confrontation Clause purposes if she is present in court and testifying).

Similar to *Owens* and *Woodall*, there was no confrontation clause violation because Markkus Stephenson was on the witness stand. RR Vol.6.p.204. After being told by the Court he would not face jeopardy, Markkus Stephenson started feigning memory loss. Markkus testified that watching his own custodial interview would not refresh his memory. RR Vol.6.p.195. After declaring Markkus Stephenson a hostile witness and determining the trustworthiness of the hearsay exception, the Trial Court allowed the State to introduce a redacted transcript of Markkus Stephenson's custodial interview as statements against penal interest. RR Vol.6.p.194; Vol.7.pp.22-26; State Exhibit No. 18.

Appellant cannot cite a single case where it was held to be a Sixth Amendment violation for the government to introduce a co-defendant's prior statements after the co-defendant had already pled guilty and waived their 5th Amendment right, and then feigns sudden memory loss on the witness stand. Instead, the Sixth Amendment violation cases cited by Appellant involve witnesses who either did not testify, had not pled guilty or waived their constitutional rights, or both. *Cf Crawford v. Washington,* 541 U.S. 36

(2004); *U.S. v. Flores*, 985 F.2d 770 (5th Cir. 1993); *U.S. vs. Alvarado-Valdez*, 521 F.3d 337 (5th Cir. 2008); *U.S. vs. Elizondo*, 502 Fed. Appx. 369 (5th Cir. 2012).

Current legal precedent is logical because a co-defendant should not be allowed to accept a better outcome and then later renege on his plea agreement with the State at the co-actor's trial by either invoking his Fifth Amendment privilege and/or feigning sudden memory loss.

### f. Error Waived

When the State introduced Markkus Stephenson's redacted transcript from his custodial interview into evidence, there was no objection. RR Vol.7.p.35. Any error in admitting the evidence is cured where the same evidence comes in elsewhere without objection. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). To preserve error, a defendant must….object at trial to the introduction of the offending evidence. *Calloway v. State*, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988). "[W]hen the evidence is offered during trial and defense counsel affirmatively represents the defendant has 'no objection' to the evidence, any alleged error in its admission is waived, even if the error had been previously preserved by a motion to suppress and an adverse ruling." *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992). Even constitutional errors may be waived

by failure to timely complain in the trial court. *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Jackson v. State,* 424 S.W.3d 140 (Tex. App. – Texarkana, 2014).

## 2. Trial Court Did Not Abuse Its Discretion in Allowing Carla Thornton to Testify About Appellant's Involvement in David's Murder and the Commerce Robbery

### a. Standard of Review

Appellant has two complaints: there was not enough evidence to prove beyond a reasonable doubt the extraneous offense, and Carla Thornton should not have been allowed to testify. However, Appellant has made two competing arguments, which do not support each other.

An appellate court reviews a trial judge's decision to admit or exclude evidence for abuse of discretion. *Green v. State,* 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). Unless a trial judge's evidentiary decision is outside the zone of reasonable disagreement, an appellate court upholds the ruling. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

### b. Admissions by a Party Opponent

At trial, Appellant tried to keep out all of Carla Thornton's testimony, not on 404(b) grounds, but on trustworthiness and credibility issues. RR

Vol.6.pp.72-73. Appellant argued that the State had to provide independent, corroborating evidence before Carla could testify. RR Vol.6.p.74. After a voir dire examination of Carla occurred outside the presence of the jury, Appellant argued her proposed testimony was inconsistent with her previous interview statements to Det. Mitchell. RR Vol.6.p72. Appellant argued that Carla's testimony was not credible because she was receiving a benefit for her testimony and that there were no corroborating circumstances to support her testimony. RR Vol.6.pp.73-4. Unlike Rule 803(24), which requires a threshold showing of trustworthiness, statements made by a party opponent to a declarant are not considered hearsay. TEX. R. EVID. 801(e)(2) (Vernon 2014); RR Vol.6.p.58. In a jury trial where the jury is the fact finder, a witness' credibility on purported statements made by the defendant is for the jury to decide and not the Trial Court. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The rule exempting admissions by a party opponent from hearsay definition recognizes that when dealing with admissions, concern is not about reliability and trustworthiness of out-of-court statement, and that party should not be allowed to exclude his own statement on ground that what he said was untrustworthy. *Peoples v. State*, 928 S.W.2d 112 (Tex. App. – Houston [1st Dist.] 1996). Admission by defendant to a third party is not

hearsay and is admissible. *Godwin v. State*, 899 S.W.2d 387 (Tex. App. –

Houston [14th Dist.] 1995, pet. refd). Admissions are admissible because the

party against whom they are offered, being their author, is estopped from

complaining of any untrustworthiness that might inhere in them. *Id.* Unlike

hearsay exception for declarations against interest, statement by defendant

qualifies as an admission even if it is not against interest when made and is

not corroborated. *Id.* Carla Thornton's testimony went to the weight, not

admissibility, of the evidence. *See Alvarado v. State*, 912 S.W.2d 199 (Tex.

Crim. App. 1995) (witness' testimony that, on night of murder, defendant's

companion stated in defendant's presence that he, defendant, and third

person had "just took somebody out" was admissible in capital murder case

as adoptive admission; defendant acquiesced by his silence in statement that

he heard and understood).

It was not disputed that Carla had already received a ten-year federal

sentence and that sentence could be reduced based upon her cooperation in

this trial. RR Vol.6.p.91; RR Vol.7.pp.40-2. Trial Counsel impeached Carla

with her extensive criminal record and with witnesses, including her own

daughter. RR Vol.6.pp. 97-102; RR Vol.7.pp.131-144, 151-52. Trial

Counsel also impeached Carla's motive for testifying – implying it was

solely to get her federal sentence reduced. RR Vol.6.pp.101-04, 112-14.

Despite Carla's possible motives, there were reasons for the **jury** to find her credible. Carla knew about the location of the missing murder weapon. RR Vol.6.p.85. Carla's statements to Det. Mitchell, made available to her daughter, had strained her relationship with her daughter Courtney. RR Vol.6.p.82, Vol.7.p.161. The Trial Court correctly decided Carla's credibility issues were best left for the jury to decide. RR Vol.6.p.76.

### c. State Exhibit Nos. 16B and 100

The Trial Court is still the gatekeeper of evidence, including evidence of extraneous offenses, and determines admissibility issues. Before any extraneous offense is admissible the offense must be clearly proven and the accused shown to have been its perpetrator. *Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974). The Trial Court was provided a certified copy of Appellant's robbery conviction. RR Vol.6. pp.184-87, 190; RR Vol.7.pp.8, 14; State Exhibit No. 100.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. RULES OF EVIDENCE 404(a) (Vernon 2011). Prior bad acts may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. RULES OF EVIDENCE 404(b) (Vernon 2011). "A party may introduce

such evidence when it logically serves to make more probable or less probable an elemental fact or an evidentiary fact that inferentially leads to an elemental fact." *Montgomery*, 810 S.W.2d at 387. "Relevant criteria include whether the ultimate issue was not seriously contested by the opponent; whether the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; whether the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; and whether the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious." *Id.* at 392.

Rule 404(b) exceptions applied not because of the distinctive nature of the handgun used in both crimes, but because **it was** the same handgun used in both crimes. RR Vol.6.p.71. When a weapon from an unrelated offense is being offered as extraneous offense evidence, the device must be so unusual and distinctive as to be like a signature. *Collazo v. State*, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981). Appellant cited cases where the weapons were very similar, but not distinctive enough to come under the 404(b) exception. Here, it was scientifically proven through ballistic testing to be the exact same handgun used in both crimes. RR Vol.6.p.78; *see Simmons v. State*, 457 S.W.2d 570 (Tex. Crim. App. 1970) (not reversible

25

error for a Dallas police officer to testify about Appellant's use of a handgun in an unrelated store robbery 11 days after the charged offense of robbery).

### d. 404(b) Balancing Test

There are multiple reasons why Carla Thornton's testimony about the Commerce robbery was relevant: rebuttal of a defensive theory, intent, identity, and motive. RR Vol.6.pp.10-12. The Trial Court allowed Carla to testify for all four specific Rule 404(b) exceptions. RR Vol.6.p.76.

This was a four year unsolved murder case, and identity of the killer/s was a contested issue. There was no clear explanation why David Olivares was chosen as a victim on the night of June 29, 2007. Besides Markkus Stephenson's interview with Det. Mitchell, Carla Thornton was the only witness that heard Appellant and Markkus Stephenson give statements concerning their motive, intent, and identity in David's murder. On determining the admissibility of the extraneous offense, the Trial Court correctly ruled that the probative value of Carla Thornton's testimony substantially outweighed the prejudicial value. RR Vol.6.p.79.

Using the 404(b) balancing test, the Trial Court limited the State's ability to prove up the extraneous offense. Although the Trial Court allowed testimony from two Commerce Police Officers, a DPS ballistics expert, and Carla Thornton to tie the murder weapon to both cases, the Trial Court ruled

26

that the Appellant's robbery conviction was too prejudicial and was not admitted in the guilt phase. RR Vol.7.p.17. While the certified robbery conviction was the best evidence to prove Appellant's guilt beyond a reasonable doubt, the jury had no context about the robbery had the witnesses not testified about the facts underlying the conviction. The Trial Court's 404(b) balancing test prevented any more prejudice to the Appellant than was necessary.

> TC: "The [state] is wanting to put a cherry on top by introducing extraneous offenses of prior convictions in the guilt...phase of the trial, which there – there is no – there is no justification for that....in light of what they've been permitted to introduce up to this point. And now the prejudicial value is just going to totally outweigh it." RR Vol.6.pp.184-5.

Appellant got his way at trial and the certified robbery conviction was not admitted during the guilt phase. Appellant cannot now complain there was not enough evidence to prove beyond a reasonable doubt that he in fact committed the Commerce Robbery, when he argued against admission of overwhelming evidence at trial that would have proven his guilt.

### e. Error Waived

Assuming Carla Thornton should not have been allowed to testify about the Appellant's involvement in the Commerce Robbery, either because she was not credible or because it was too prejudicial, any error was

27

waived. "It is well-established that failure to object to admission of extraneous offenses waives the objection and presents nothing for review." *Smith v. State*, 595 S.W.2d 120, 123 (Tex. Crim. App. 1980). Once Commerce Police Officers testified that Appellant was involved in the Commerce robbery, any error related to Carla Thornton's previous testimony on the Commerce robbery was waived. *See Hudson*, 675 S.W.2d at 511; RR Vol.6.pp.126, 136.

## PRAYER

**Appellant's trial was without prejudicial error. The State prays that Appellant's conviction and sentence be affirmed.**

**Respectfully submitted,**

NOBLE DAN WALKER, JR.
**District Attorney**
**Hunt County, Texas**

G CALVIN GROGAN V
**Assistant District Attorney**
**P. O. Box 441**

4th Floor, Hunt County
Courthouse
Greenville, TX 75403
State Bar No. 24050695
(903) 408-4180
FAX (903) 408-4296
cgrogan@huntcounty.net

## CERTIFICATE OF COMPLIANCE WITH T.R.A.P. 9.4(i)(3)

Relying on Microsoft Word's word count feature used to create the State's Reply Brief, I certify that the number of words contained in this brief is 5,628 and the typeface used is 14Font.

_____
**G CALVIN GROGAN V**
Assistant District Attorney

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been mailed via first-class mail to Katherine Ferguson, Appellant's attorney of record, today, December 4, 2015, pursuant to Texas Rules of Appellate Procedure.

_____
**G CALVIN GROGAN V**
Assistant District Attorney